Case 2:24-cr-00239-JS   Document 1   Filed 06/27/24   Page 1 of 16

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 24- |
| v. | : | DATE FILED: _____ |
| GREGORY J. STEFAN, JR. | : | VIOLATIONS: |
| | | 18 U.S.C. § 1343 (wire fraud – 7 counts) |
| | : | Notice of forfeiture |

## <u>INDICTMENT</u>

## <u>COUNTS ONE THROUGH SEVEN</u>

THE GRAND JURY CHARGES THAT:

At all times material to this indictment:

## BACKGROUND

1.      Defendant GREGORY J. STEFAN, JR. was a salesman who sold custom headstone memorials and engraving services to mark the graves of the deceased to customers residing primarily in Pennsylvania and New Jersey.

2.      1843 LLC ("1843") was a Pennsylvania limited liability company formed in July 2016, with a registered office address on North Lansdowne Avenue in Upper Darby, Pennsylvania. Defendant GREGORY J. STEFAN, JR. and his brother, G.S., were each 50% owners of 1843. From in or about July 2016 through in or about March 2021, defendant GREGORY J. STEFAN, JR. primarily conducted business through 1843.

3.      Defendant GREGORY J. STEFAN, JR. ran the day-to-day operations of 1843 and exercised exclusive control over 1843's finances. Defendant STEFAN, along with G.S., also made sales calls to prospective customers.

4. 1843 did not manufacture or engrave its own headstones so 1843 hired third-party suppliers to provide the goods and services ordered by 1843's customers. The majority of 1843's orders were manufactured by Company A, a wholesaler of memorial monuments located in Hillsborough, New Jersey. Company A required 1843 to pay for a customer's stone in full before Company A would release it to be laid in a cemetery.

5. Defendant GREGORY J. STEFAN, JR.'s father had also been in the headstone sales business dating back to the 1970s. Over time, the family acquired other family-run headstone companies and continued using the names of those companies from time to time to capitalize on customers' familiarity with those local businesses in different Philadelphia suburbs. Regardless of which business name defendant STEFAN used when approaching customers, from in or about July 2016 through in or about March 2021, defendant STEFAN's business was conducted through 1843.

6. Prior to in or about 2016, defendant GREGORY J. STEFAN, JR.'s family had begun to fall behind on fulfilling customer orders for custom headstones. In or about 2015, the Pennsylvania Office of Attorney General filed a civil lawsuit (the "2015 AG lawsuit") against defendant STEFAN's father, alleging that he had engaged in deceptive business practices by failing to timely deliver headstones to customers dating back to at least in or about 2010. Neither defendant STEFAN nor his brother, G.S., were named as defendants in that lawsuit.

7. In or about January 2021, the Delaware County Court of Common Pleas found defendant GREGORY J. STEFAN, JR.'s father in contempt of a consent agreement that had been in place in the 2015 AG lawsuit. As part of the court's contempt ruling, defendant STEFAN's father was barred from engaging in any business selling cemetery products in Pennsylvania in any ownership or managerial capacity.

8. Colonial Memorials, Inc. was a Delaware corporation incorporated on or about February 17, 2021, with a registered office address in Bridgewater, New Jersey. Defendant GREGORY J. STEFAN, JR.'s wife, S.S., held the position of President of Colonial Memorials until she passed away in or about September 2022.

9. Notwithstanding S.S.'s title as President, defendant GREGORY J. STEFAN, JR. ran Colonial Memorials, which he operated as an extension of 1843. Pursuant to a services agreement between Colonial Memorials and 1843, executed on or about April 1, 2021, 1843 was tasked with conducting sales on Colonial Memorials' behalf by providing the staff and resources necessary to find prospective customers and close sales for Colonial Memorials. In addition, 1843 was responsible for arranging for the purchase and delivery of headstones and for the engraving of preexisting monuments. In exchange, Colonial Memorials agreed to pay 1843 a flat rate per month, plus 30% of any revenue collected from the sale of memorials and engravings.

10. From in or about April 2021 through in or about September 2023, defendant GREGORY J. STEFAN, JR. primarily conducted business through Colonial Memorials.

11. In or about August 2021, the Pennsylvania Office of Attorney General filed a second civil lawsuit (the "2021 AG lawsuit"), this time naming defendant GREGORY J. STEFAN, JR., as well as his brother, G.S., his father, and 1843 as defendants. The 2021 lawsuit alleged that defendant STEFAN and his co-defendants had engaged in deceptive business practices by failing to timely deliver headstones to customers dating back to at least in or about 2016.

## THE SCHEME

12.     From in or about January 2018 through in or about September 2023, in the Eastern District of Pennsylvania, and elsewhere, defendant

## GREGORY J. STEFAN, JR.,

along with co-schemers known to the grand jury, devised and intended to devise a scheme to defraud hundreds of customers of 1843 and Colonial Memorials and to obtain money and property by means of false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS

It was part of the scheme that:

13.     Defendant GREGORY J. STEFAN, JR. consistently promised his customers that they would receive the goods and services that he sold to them within a timeframe of no more than 24 to 28 weeks, knowing that in hundreds of cases he would be unable to deliver those orders on time, or at all. As part of these sales, defendant STEFAN demanded large up-front payments from his customers, deposited these payments immediately, and, rather than use the funds to procure the goods and services for which the customers paid, he used many of the funds to finance his own personal living expenses and those of his brother, G.S.

14.     Defendant GREGORY J. STEFAN, JR. identified potential customers by searching local obituaries and approaching family members of the deceased shortly after their loved one's passing, by either an unsolicited phone call or simply showing up at their home address.

15.     Defendant GREGORY J. STEFAN, JR. typically conducted his sales meetings at a prospective customer's home. During the meetings, defendant STEFAN discussed

4

options for the customer's headstone design and used a software program to create a mockup of the customer's desired headstone. At the initial meeting, defendant STEFAN and the customer agreed on a rough design and a price for the stone. Both defendant STEFAN and the customer signed a form contract, which contained an approximate delivery date. Defendant STEFAN usually listed a specific month or season as the approximate delivery date, no more than 24 to 28 weeks from the date of the order. Both defendant STEFAN and the customer then signed the contract.

16. Defendant GREGORY J. STEFAN priced 1843's headstones at a very significant markup over cost, nearly 400% on average. He required a substantial up-front payment at the time of the initial meeting, even though he did not immediately pay 1843's suppliers. Defendant STEFAN often requested full payment up front but sometimes accepted a 50% deposit if the customer objected. Customers typically made payments by check, and defendant STEFAN regularly cashed those checks either that very same day or the following day.

17. Despite receiving and depositing customers' payments, defendant GREGORY J. STEFAN, JR. often did not deliver the orders as agreed upon. The projected delivery date for a customer's order often passed with no further communication from defendant STEFAN or any other representative of 1843. When customers reached out to 1843 to request updates on the status of their overdue orders, defendant STEFAN regularly either ignored them or employed lulling tactics and assured them that their orders would be delivered shortly. Defendant STEFAN, however, often took no steps to follow through on those assurances. At times, defendant STEFAN even failed to deliver custom headstones which Company A had manufactured and which were ready to be delivered because defendant STEFAN did not pay

Company A for its work and, as a result, Company A refused to release the stone.

18.     In addition to failing to deliver hundreds of orders altogether, defendant GREGORY J. STEFAN, JR. delivered many more orders very late and/or in a manner that did not conform to the customers' specifications.

19.     Defendant GREGORY J. STEFAN, JR. typically ignored refund requests from customers who did not receive their orders, although he was more responsive to customers who were persistent and vocal in their complaints, in particular those who threatened legal action.

20.     In or about July 2018, defendant GREGORY J. STEFAN, JR. sold victim D.S. of Philadelphia, Pennsylvania a headstone for her deceased parents, with a December 2018 delivery date. Defendant STEFAN charged D.S. approximately $2,580 for the stone and caused D.S. to make a downpayment of approximately $1,250. In or about December 2018, after D.S. made repeated attempts to contact him, defendant STEFAN represented that the headstone would be installed in Spring 2019. In response to a further inquiry from D.S. in or about July 2019, defendant STEFAN stated that the stone would be delivered in August 2019. Although Company A had informed defendant STEFAN on or about July 9, 2019 that D.S.'s stone had been cut and was ready to be picked up, defendant STEFAN did not pick up the stone from Company A's warehouse. When D.S. later contacted defendant STEFAN in or about September 2019 to request a modification to the headstone—which defendant STEFAN still had not delivered— defendant STEFAN required D.S. to make an additional payment for that modification, causing D.S. to pay a total of approximately $3,405 for the stone. Even though D.S. paid her balance in full, defendant STEFAN did not deliver D.S.'s headstone or provide D.S. with a refund, and neither defendant STEFAN nor any other representative of 1843 contacted D.S. again.

21.     In or about April 2019, defendant GREGORY J. STEFAN, JR. approached victim E.N. shortly after her husband's death in an attempt to sell her a memorial, but E.N. told defendant STEFAN that she was still grieving and was not ready to purchase a tombstone. Defendant STEFAN continued to call E.N. on a weekly basis requesting a sales meeting and in or about June 2019, defendant STEFAN ultimately secured a meeting with E.N. at her home in Wilmington, Delaware. During that meeting, defendant STEFAN sold E.N. a headstone for approximately $4,318 with a Fall 2019 delivery date. Defendant STEFAN caused E.N. to pay an approximate $2,500 deposit at their initial meeting, and to pay the remainder of the balance (approximately $1,818) by a check dated August 8, 2019. Defendant STEFAN cashed E.N.'s $1,818 check on or about August 12, 2019.

22.     When E.N. tried to contact defendant GREGORY J. STEFAN, JR. regarding her order, he did not respond. Eventually, a customer service employee of 1843 sent E.N. a mockup of her headstone in or about November 2019, which E.N. promptly approved. In or about April 2020, when E.N. reached out to 1843 again regarding the undelivered headstone, defendant STEFAN's father responded that the headstone was ready to be placed, but once again, no headstone was delivered. In or about August 2020, E.N. spoke directly with defendant STEFAN, and defendant STEFAN assured E.N. that he would look into the delay and call her back the following day. Defendant STEFAN, however, did not do so. When E.N. made a refund request by email a few weeks later, defendant STEFAN did not respond to E.N.'s email. About a year later, in or about September 2021, defendant STEFAN caused 1843 to send E.N. a generic form letter which attributed 1843's delays in delivering customer orders to family illness and the COVID-19 pandemic and offered no projected delivery date for past-due orders. Defendant STEFAN never delivered E.N.'s headstone, nor did he provide a refund.

7

23.     In or about April 2020, defendant GREGORY J. STEFAN, JR. sold victim S.R. a headstone with a Fall 2020 delivery date during a meeting with S.R. at her home in Pottstown, Pennsylvania. Defendant STEFAN charged S.R. approximately $3,818 for the stone and caused S.R. to pay the entire balance by check during their meeting. Defendant STEFAN cashed S.R.'s check the following day. Defendant STEFAN, however, did not contact S.R. by the agreed-upon delivery date, causing S.R. to reach out by phone and email to inquire as to the status of her order. Defendant STEFAN did not respond to any of S.R.'s attempts to contact him, and ignored multiple emails that S.R. sent to him in or about March 2021, initially requesting an update on her order and eventually seeking a full refund. Moreover, defendant STEFAN did not provide the requested refund, and did not deliver S.R.'s headstone. Several months later, however, defendant STEFAN caused 1843 to send S.R. the same letter sent to victim E.N. in or about September 2021, acknowledging delays in the ordering process and offering no assurances that customer orders would eventually be fulfilled.

24.     In or about December 2020, defendant GREGORY J. STEFAN, JR. sold victim M.L. a headstone with a delivery date of "Spring/Summer 2021" during a meeting with M.L. at her home in Perkasie, Pennsylvania. Defendant STEFAN charged M.L. approximately $13,233 for the stone and caused M.L. to pay the entire balance by check during their meeting. Defendant STEFAN cashed M.L.'s check the following day. Defendant STEFAN, however, did not deliver the headstone on time. When M.L. began calling defendant STEFAN at multiple different phone numbers in or about Fall 2021 to inquire about the status of her order, defendant STEFAN did not return M.L.'s phone calls. Defendant STEFAN never delivered M.L.'s headstone and did not provide a refund.

25.     In or about December 2020, defendant GREGORY J. STEFAN, JR. sold victim M.K. a cremation marker with a delivery date of "Spring/Summer 2021" during a meeting with M.K. at his home in Nazareth, Pennsylvania. Defendant STEFAN charged M.K. approximately $3,138 for the marker and caused M.K. to pay an approximate $1,900 deposit by check at their initial meeting, which defendant STEFAN cashed that very same day. Defendant STEFAN also caused M.K. to pay the approximate $1,238 balance remaining on his order shortly thereafter. In the months that followed, defendant STEFAN could not be reached by phone and was often slow to respond to M.K.'s emails requesting status updates. When defendant STEFAN did respond to M.K.'s inquiries, he repeatedly assured M.K. that his order was on track. On or about May 19, 2021, defendant STEFAN informed M.K. that his marker would be delivered between June 3 and June 9, 2021. When defendant STEFAN missed that deadline, causing M.K. to request a refund several times by email, defendant STEFAN did not respond to M.K.'s refund requests until on or about June 25, 2021, when defendant STEFAN informed M.K. that he had been traveling for medical treatments and would provide a more definite update the following week. Defendant STEFAN, however, never got back to M.K., and did not provide M.K. a refund or deliver his cremation marker.

26.     Shortly after the January 2021 contempt ruling against his father in the 2015 AG lawsuit, defendant GREGORY J. STEFAN, JR. orchestrated the incorporation of Colonial Memorials, which had a registered address in New Jersey and which targeted New Jersey-based customers. Beginning in or about April 2021, defendant STEFAN marketed his goods and services to prospective customers exclusively under the Colonial Memorials name. Defendant STEFAN continued to routinely fail to deliver customer orders that were fully paid for, just as he had when conducting business through 1843.

9

27.     While litigating the 2021 AG lawsuit in Pennsylvania, defendant GREGORY J. STEFAN, JR. continued to sell headstones and engraving services to New Jersey customers under the Colonial Memorials name. In or about October 2022, defendant STEFAN sold victim S.T. an approximate $7,597 headstone during a meeting with S.T. at her home in Jackson, New Jersey. Defendant STEFAN noted in S.T.'s contract that the stone would be delivered approximately "24 to 28 weeks from date order is placed." Defendant STEFAN initially requested payment in full but after further negotiation, he agreed to accept a deposit of approximately $3,800 from S.T. Defendant STEFAN cashed S.T.'s deposit check the following day. Defendant STEFAN did not respond to subsequent calls and emails from S.T. attempting to make a slight modification to her headstone design. Although a Colonial Memorials customer service employee eventually returned S.T.'s calls and assured her that defendant STEFAN would be in touch, neither defendant STEFAN nor anyone else from Colonial Memorials ever got back to S.T. Defendant STEFAN also failed to respond to a formal demand letter from S.T. requesting a refund. Instead, in or about August 2023, defendant STEFAN caused Colonial Memorials to send S.T. a generic form letter indicating that the company had suffered significant financial losses and did not have the financial resources to fulfill her contract.

28.     In or about March 2023, defendant GREGORY J. STEFAN, JR. sold victim C.B. an approximate $6,694 headstone during a meeting with C.B. at her home in Little Egg Harbor Township, New Jersey. Defendant STEFAN noted in C.B.'s contract that the stone would be delivered approximately "24 to 28 weeks from date order is placed." Defendant STEFAN informed C.B. that he required a 65% downpayment, and he caused C.B. to make an approximate $4,351 deposit by check, which defendant STEFAN cashed the following day.

29.     In or about April 2023, defendant GREGORY J. STEFAN, JR. agreed to meet with C.B. in person at Company A to look at headstones in an effort to help C.B. finalize her order. When C.B. approved a headstone design by email on or about June 8, 2023, a Colonial Memorials customer service employee advised C.B. that she could expect a turnaround time of two to four weeks. Defendant STEFAN, however, did not deliver C.B.'s stone. Instead, in or about August 2023, defendant STEFAN caused Colonial Memorials to send C.B. the form letter sent to victim C.B., prompting C.B. to contact Company A and learn that defendant STEFAN had ordered the stone but not paid anything for it. When C.B. reached out to defendant STEFAN by email requesting to cancel her contract on or about August 9, 2023, defendant STEFAN did not reply to C.B.'s email, did not provide a refund, and did not deliver C.B.'s headstone.

30.     In total, defendant GREGORY J. STEFAN, JR. failed to deliver, or provide refunds for, orders placed by almost 500 customers—more than 25% of all customer orders placed between in or about January 2018 and in or about March 2023. Customers had paid defendant STEFAN in excess of $1.5 million for those orders.

31.     On or about each of the dates set forth below, in the Eastern District of Pennsylvania, defendant

**GREGORY J. STEFAN, JR.,**

for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate or foreign commerce the signals and sounds described below, each transmission constituting a separate count:

11

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| 1 | August 12, 2019 | Deposit in Philadelphia, Pennsylvania of E.N.'s $1,818 personal check into 1843's Univest account ending -2784, processed through a server located in Allen, Texas |
| 2 | September 30, 2019 | Deposit in Philadelphia, Pennsylvania of D.S.'s $330 personal check into 1843's Univest account ending -2784, processed through a server located in Allen, Texas |
| 3 | April 24, 2020 | Deposit in Philadelphia, Pennsylvania of S.R.'s $3,818 personal check into 1843's Univest account ending -2784, processed through a server located in Allen, Texas |
| 4 | December 2, 2020 | Deposit in Radnor, Pennsylvania of M.L.'s $13,233 personal check into 1843's TD Bank account ending -0842, processed through a server located in Toronto, Canada |
| 5 | December 17, 2020 | Deposit in Conshohocken, Pennsylvania of M.K.'s $1,900 personal check into 1843's TD Bank account ending -0842, processed through a server located in Toronto, Canada |
| 6 | October 20, 2022 | Deposit in Conshohocken, Pennsylvania of S.T.'s $3,800 personal check into Colonial Memorials' Tompkins Community Bank account ending -7962, processed through a server located in Ithaca, New York |
| 7 | March 3, 2023 | Deposit in Conshohocken, Pennsylvania of C.B.'s $4,351 personal check into Colonial Memorials' Tompkins Community Bank account ending -7962, processed through a server located in Ithaca, New York |

All in violation of Title 18, United States Code, Section 1343.

12

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     As a result of the violations of Title 18, United States Code, Section 1343 set forth in this indictment, defendant

**GREGORY J. STEFAN, JR.,**

shall forfeit to the United States of America any property that constitutes or is derived from proceeds traceable to the commission of such violations including, but not limited to, the sum of $1,552,120.

2.     If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a)     cannot be located upon the exercise of due diligence;

    (b)     has been transferred or sold to, or deposited with, a third party;

    (c)     has been placed beyond the jurisdiction of the Court;

    (d)     has been substantially diminished in value; or

    (e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 981(a)(1)(C).

A TRUE BILL:

<div style="background:black"> </div>

**FOREPERSON**

JACQUELINE C. ROMERO
UNITED STATES ATTORNEY

14

*Criminal No.*

## UNITED STATES DISTRICT COURT

Eastern District of Pennsylvania

Criminal Division

## THE UNITED STATES OF AMERICA

vs.

## GREGORY J. STEFAN, JR.

### INDICTMENT

Counts
18 U.S.C. § 1343 (wire fraud – 7 counts)
Notice of forfeiture

███████████████████████████████
Foreperson

Filed in open court this _____ 2 7 _____ day,
Of _____ JUNE _____ A.D. 20 __ 2 4 __

████████████████████████
Foreperson

Bail, $ _____